IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KELLEY MURPHY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | C.A. No. 1:23-cv-01216-CFC-SRF |

## REPORT AND RECOMMENDATION

Plaintiff Kelley Murphy filed this action on October 25, 2023, against Defendant Martin O'Malley,[1] the Commissioner of the Social Security Administration ("the Commissioner"). Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's May 16, 2023, final decision denying Plaintiff's claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"), respectively. 42 U.S.C. §§ 401–434, 1381–1383f.

Before the court are Plaintiff and the Commissioner's cross-motions for summary judgment. (D.I. 12; D.I. 15)[2] Plaintiff asks the court to remand her case for further administrative proceedings. (D.I. 12) The Commissioner requests the court affirm the Administrative Law Judge's ("ALJ") decision. (D.I. 15) For the reasons that follow, the court recommends that Plaintiff's motion for summary judgment be **GRANTED-IN-PART** and the Commissioner's motion for summary judgment be **DENIED-IN-PART**.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and is substituted for Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.
[2] The briefing submitted for these motions can be found at DI. 13, D.I. 16, and D.I. 17.

1

I.  **BACKGROUND**

A. **Procedural History**

Plaintiff protectively filed a Title II application for disability benefits and a Title XVI application for supplemental security income on April 9, 2019, and April 11, 2019, respectively, for a period of disability starting on January 1, 2018 (hereinafter "alleged onset date" or "AOD"). (D.I. 8 at 305–17) Plaintiff's initial claims were denied, (*id.* at 151–56), as were her reconsiderations. (*Id.* at 159–64) Thereafter, Plaintiff requested a hearing before an ALJ on January 2, 2020, (*id.* at 165–66), and a hearing was held telephonically on May 4, 2023, before ALJ Michele Stolls. (*E.g.*, *id.* at 46) During the hearing, Plaintiff amended her AOD to September 1, 2022. (*See id.* at 56–57) ALJ Stolls issued a decision affirming the denial of benefits on May 16, 2023. (*Id.* at 22–45) Plaintiff timely filed a request for review by the Appeals Council, which was denied on August 28, 2023, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 9–14) This civil action was timely filed in the District of Delaware on October 25, 2023. (*See* D.I. 2)

B. **Medical Evidence**

Plaintiff is a woman in her sixties who previously worked as a data analyst and secretary. (D.I. 8 at 385–92; D.I. 8-2 at 2) She filed her applications for disability benefits and supplemental security income on April 9, 2019, and April 11, 2019, respectively, for back pain, knee pain, and mental health issues. (*E.g.*, D.I. 8 at 57, 60, 65–66)

In her decision, the ALJ found at step two of the sequential evaluation process that she had three severe impairments: "degenerative disc disease with stenosis, osteoarthritis, neurogenic claudication, and scoliosis of the lumbar spine status post-surgery and degenerative disc disease of the thoracic spine[.]" (*Id.* at 28 (citations omitted)) As part of her step two

analysis, the ALJ also evaluated whether Plaintiff had any medically determinable mental impairments. (*Id.* at 29–31) The ALJ concluded that Plaintiff had medically determinable mental health impairments of a depressive disorder and a generalized anxiety disorder, so she went on to rate the degree of Plaintiff's functional limitation resulting from her depression and anxiety in accordance with the four criteria commonly referred to as the "Paragraph B" criteria. (*Id.*); *see also* 20 C.F.R. § 404.1520a(c)(3). She concluded that "[Plaintiff's] medically determinable mental impairments of a depressive disorder and a generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (D.I. 8 at 29)

The court focuses its summary of the medical evidence on the records relevant to Plaintiff's mental impairments, which form the basis of her appeal. (*See* D.I. 13)

On August 5, 2019, Plaintiff was examined by state consultant Dr. Mikhael Taller. (D.I. 8-1 at 20–28) Plaintiff described feeling depressed, having trouble sleeping, crying, not enjoying activities, and feeling hopeless or worthless. (*Id.* at 21) Plaintiff stated that she had never seen a psychiatrist and that she last saw a therapist in 2004. (*Id.*) Additionally, she took no medication for her mental health symptoms. (*Id.* at 21, 26) He also noted that Plaintiff was able to conduct activities on her own initiative and care for her personal needs. (*Id.* at 25–26)

At the initial determination level, Plaintiff's medical records were examined on August 19, 2019, by state consultant Dr. Michael Plasay. (D.I. 8 at 98–111) Dr. Plasay reiterated the findings from Dr. Taller's examination. (*See id.* at 103–04) He diagnosed Plaintiff with a severe depressive disorder. (*Id.* at 104) He noted moderate limitations in the "Paragraph B" criteria of understanding, remembering, and applying information; concentrating, persisting, or maintaining

3

pace; and adapting and managing oneself; and a mild limitation in interacting with others. (*Id.*) Dr. Plasay recommended that Plaintiff could perform simple work. (*Id.*)

On October 25, 2019, Plaintiff's primary care provider, Lindsey MacNeil, CRNP, completed a medical opinion questionnaire, wherein she indicated that Plaintiff did not have mental impairments that would limit her ability to work. (D.I. 8-1 at 552–56)

At the reconsideration level, Plaintiff's medical records were examined on December 10, 2019, by Dr. Sreeja Kadakkal, who affirmed Dr. Plasay's findings at the initial determination level. (D.I. 8 at 127–32) Dr. Kadakkal noted, despite reports of low self esteem and tearful affect, that Plaintiff could recall words from memory immediately and two of three after a five-minute delay, did not have suicidal ideations or delusions, and had fair insight and judgment. (*Id.* at 131–32) He affirmed Dr. Plasay's diagnosis of a severe depressive disorder and affirmed Dr. Plasay's recommendation that Plaintiff could complete simple work. (*Id.* at 132) Moreover, Dr. Kadakkal noted moderate impairments in the "Paragraph B" criteria of concentrating, persisting, or maintaining pace and adapting and managing oneself, and mild limitations in understanding, remembering, or applying information and interacting with others. (*Id.* at 131)

### C. Plaintiff's Testimony Before the ALJ

Plaintiff testified at the hearing on May 4, 2023, that she does not receive mental health treatment, nor is she taking medication for her mental health symptoms. (D.I. 8 at 61) She lives with her mother, helps with laundry and vacuuming, and makes simple meals using a microwave. (*Id.* at 64–65) Plaintiff spends time reading, stitching, watching television, and visiting with her girlfriend. (*Id.* at 61, 66–67) She also testified that she is forgetful and has trouble concentrating. (*Id.* at 68–69)

### D. The ALJ's Findings

Based on the entire record, the ALJ determined that Plaintiff was not disabled under the Act, finding in pertinent part:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since September 1, 2022, the amended alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease with stenosis, osteoarthritis, neurogenic claudication, and scoliosis of the lumbar spine status post-surgery and degenerative disc disease of the thoracic spine (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. . . . [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), however, her ability to work at that level is reduced in that she is limited to occupations that require no more than occasional postural maneuvers, such as stooping, or kneeling, crouching, or crawling and climbing on ramps and stairs but must avoid occupations that require climbing on ladders, ropes and scaffolds; is limited to occupations that require no more than frequent balancing; and must avoid concentrated prolonged exposure to cold temperature extremes, vibration, or exposure to hazards such as dangerous machinery and unprotected heights.
>
> 6. The claimant is capable of performing past relevant work as a Data Analyst and Secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2018, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(D.I. 8 at 28–36)

5

## II. LEGAL STANDARD

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 587 U.S. at 103). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (alterations in original) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "'more than a mere scintilla'" of evidence. *Id.* at 103. Additionally, when reviewing the record for substantial evidence, "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

## III. DISCUSSION

### A. Disability Determination Process

Title II of the Act affords insurance benefits to people who contributed to the program and who have a disability. *See Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (citing 42 U.S.C. § 423(a)(1)). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A).

6

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity (hereinafter "RFC") to perform past relevant work. *See id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. "A claimant's RFC measures the most she can do despite her limitations." *Zirnsak*, 777 F.3d at 611 (internal quotations and alterations omitted) (quoting 20 C.F.R. § 404.1545(a)(1)). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *Id.* The ALJ often seeks the VE's assistance in making this finding. *Id.*

## B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff makes the following arguments in favor of remand[3] of the ALJ's decision to deny benefits: (1) the ALJ substituted her lay judgment for those of the medical health professionals in finding that Plaintiff's mental impairments are non-severe; (2) the ALJ failed to properly incorporate Plaintiff's established mental impairments into the RFC; and (3) the ALJ's opinion does not make clear the timeframe that was considered in making her decision. (D.I. 13) For the reasons that follow, the court recommends that this case be remanded for additional administrative proceedings consistent with this Report and Recommendation.

---

[3] Plaintiff's opening brief states that she is seeking both remand and reversal of the ALJ's decision. (D.I. 13 at 19) A case should be reversed and benefits awarded "'when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits.'" *Nazario v. Comm'r of Soc. Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)); *see also Peebles v. Apfel*, 1999 WL 223500, at *7 (D. Del. Mar. 31, 1999). Here, for the reasons explained below, the administrative record would benefit from more factual development. Accordingly, reversal with the award of benefits is inappropriate.

8

### 1. Substantial Evidence Supports the ALJ's Finding of Non-Severe Mental Impairments at Step Two

Plaintiff avers that the ALJ improperly substituted her lay opinion in place of the medical professionals in concluding that Plaintiff's mental impairments were non-severe. (D.I. 13 at 2–7) The Commissioner argues that the ALJ adequately explained how she weighed the relevant mental health records, and thus, the ALJ's conclusion that Plaintiff's mental impairments are non-severe is supported by substantial evidence. (D.I. 16 at 3–7)

At step two, the ALJ considers whether a claimant has severe health impairments. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). An impairment is severe when it significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.922. The ALJ assesses the severity of a claimant's mental impairments across the following four broad functional areas termed the "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3).

The record demonstrates that there is substantial evidence to support the ALJ's finding of non-severe mental impairments causing no more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (*See* D.I. 8 at 29–31)

In the first functional area of understanding, remembering, or applying information, the ALJ considered Plaintiff's self-reports of occasionally forgetting to take her medication and difficulty following written and oral instructions. (*Id.* at 29) She also considered Plaintiff's statement that she reads as a hobby. (*See id.*) Moreover, the ALJ considered Dr. Taller's mental status examination, which indicated an intact memory and ability to recall information. (*See id.*) The ALJ further considered that Plaintiff's treating provider, MacNeil, did not report limitations

9

in this area of mental functioning. (*See id.*) Thus, the ALJ determined that Plaintiff has a mild limitation understanding, remembering, or applying information. (*Id.*)

In the second area of mental functioning, interacting with others, the ALJ considered Plaintiff's self-reports of some social isolation unaffecting her interaction with her girlfriend, parents, or others. (*Id.*) The ALJ considered that MacNeil found no limitations in this functional area, noting that Plaintiff has the ability to accept criticism and get along with coworkers. (*See* D.I. 8 at 29) The ALJ considered Dr. Taller's report of poor eye contact during his consultative evaluation on August 5, 2019. (*Id.*; *see also* D.I. 8-1 at 22) Thus, the ALJ determined that Plaintiff has a mild limitation in the area of interacting with others. (D.I. 8 at 29)

In the third area of mental functioning, concentrating, persisting, and maintaining pace, the ALJ considered Plaintiff's reported difficulty concentrating for more than thirty (30) minutes at a time and completing tasks. (*Id.*) Yet, Plaintiff reported that she could make simple meals and manage her finances. (*Id.* at 29–30) The ALJ further considered Dr. Taller's evaluation, in which he noted Plaintiff has goal-directed and coherent thought processes. (*See id.* at 29) Additionally, the ALJ noted that MacNeil indicated that Plaintiff could maintain attention for two-hour segments and had no limitations in this area of functioning. (*See id.* at 30) The ALJ concluded that Plaintiff suffers a mild limitation concentrating, persisting, and maintaining pace. (*Id.*)

In the fourth area of mental functioning, adapting and managing oneself, the ALJ considered Plaintiff's self-reports of difficultly managing stress and ongoing mental health symptoms. (*Id.*) She also considered Dr. Taller's treatment records, which indicated fair insight and judgment. (*Id.*) Moreover, the ALJ assessed MacNeil's report, which did not indicate

limitations in this area of mental functioning. (*See id.*) Thus, the ALJ concluded that Plaintiff has a mild limitation adapting and managing herself. (*Id.*)

Based on her analysis of the "Paragraph B" criteria, in which she found mild limitations for each area of mental functioning, the ALJ concluded that Plaintiff's mental health limitations do no more than minimally impact her ability to perform basic work activities, and accordingly assessed her medically determinable impairments of a depressive disorder and anxiety disorder as non-severe. (*Id.*)

Plaintiff argues that the consultative examiner, Dr. Taller, and the agency consultants, Drs. Plasay and Kaddakal, all agreed that Plaintiff's mental limitations warrant a finding of a severe limitation, and the ALJ's finding of a non-severe limitation amounts to an improper substitution of her lay opinion that fails to consider the consistency among the experts' opinions. (D.I. 13 at 2–7) But although these opinions are consistent with each other, Plaintiff's symptoms must also be consistent with the objective medical record. 20 C.F.R. § 404.1529(a). The ALJ found that a severe mental health impairment was "inconsistent" with the hearing level evidence, namely Plaintiff's ability to reside alone and, importantly, her statement from March of 2022 in which she indicated that she was not interested in counseling. (D.I. 8 at 30–31; *see also* D.I. 8-2 at 319) Moreover, the ALJ opined how this evidence was "consistent" with MacNeil's assessment of no functional limitations. (D.I. 8 at 30–31)

Plaintiff argues that it was erroneous for the ALJ to find Dr. Taller's opinion unpersuasive on the basis that it predates the AOD, while on the other hand, accepting as persuasive the opinion of MacNeil, which issued only a few months later. (D.I. 13 at 5) But the ALJ's step two analysis demonstrates that Dr. Taller's opinion was reasonably considered along with the other mental health evidence, including the records from MacNeil that were created

11

after Taller's examination. (*See* D.I. 8 at 29–31) Additionally, Plaintiff argues that the ALJ failed to take records from MacNeil into account from March and September of 2022 that reflect a diagnosis of depression. (D.I. 13 at 5) But there is no dispute that the ALJ acknowledged that Plaintiff has a depressive disorder. (D.I. 8 at 29)

Lastly, Plaintiff's argument that the ALJ failed to consider alternative explanations for why Plaintiff did not receive mental health treatment, including her inability to afford it, also fails because Plaintiff indicated that she was not interested in pursuing mental health counseling in March of 2022. (D.I. 13 at 7; *see also id.* at 31; D.I. 8-2 at 319) The ALJ, thus, provided a sufficient reason for not inquiring into this topic further.

Plaintiff's arguments improperly ask the court to reexamine the weight or persuasiveness of all of the expert opinions, rather than determine whether substantial evidence supports the ALJ's conclusion. The court recommends that the evidence in the record considered by the ALJ in support of her step two assessment meets the threshold for satisfying the substantial evidence standard. Therefore, the court recommends **DENYING** Plaintiff's motion for summary judgment and **GRANTING** the Commissioner's cross-motion on this issue.

### 2. The ALJ Failed to Include Plaintiff's Non-Severe Mental Limitations Into the RFC

As discussed in the previous Section, *supra*, an ALJ is required to assess a claimant's mental health limitations through evaluation of the "Paragraph B" criteria. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If a claimant's mental health impairments do not constitute a per se disability in step three, all of a claimant's credibly established limitations, even those that are non-severe, must be considered in crafting the RFC in step four. *See Ramirez v. Barnhart*, 372 F.3d 546, 552–55 (3d Cir. 2004); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). But the ALJ's findings

concerning the "Paragraph B" criteria in step two do not bear directly on the language used in the RFC because those portions of the disability analysis serve distinct purposes. *Hess*, 931 F.3d at 209 (noting that the "Paragraph B" criteria are used to rate the severity of a claimant's mental limitations, while the RFC assesses a claimant's work-related restrictions). Thus, the ALJ is not required to use any specific "incantation[]" in her RFC analysis that reflects the consideration of a credibly established mental health limitation in step two, so long as there is a "valid explanation" for how the limitation was considered by the ALJ and whether it translates to a work-related restriction. *Id.* at 209–12. Whether a valid explanation is given by the ALJ is a fact-specific analysis. *Id.* at 212.

Plaintiff argues that the RFC does not reflect consideration of her mild limitations in the "Paragraph B" criteria that the ALJ assessed in step two. (D.I. 13 at 7–17) The Commissioner argues that the ALJ alone crafts the Plaintiff's RFC and that her decision not to include mental health limitations in Plaintiff's RFC is supported by substantial evidence. (D.I. 16 at 7–10)[4]

The law is clear that the ALJ was required at step four to consider all of Plaintiff's impairments, even those she found were non-severe. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Plaintiff agrees that the ALJ's decision could be affirmed if, in the body of the RFC analysis, the ALJ affirmatively explained why the non-severe mental health functional limitations had been omitted despite the "Paragraph B" findings in step two. (D.I. 8 at 11–16); *see also Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) (holding that an ALJ is required to consider non-severe mental limitations assessed in step two in the RFC and failure to

---

[4] *See* RFC in § I.D., *supra*.

13

do so constitutes error). Plaintiff is correct that the ALJ needs to affirmatively explain why the mild mental health functional limitations identified in step two were omitted from her RFC.

A denial of benefits was upheld in an analogous case in this District where the ALJ explained why mild mental health limitations were not included in the RFC. In *Charlier v. Kijakazi*, 2022 WL 66327 (D. Del. Feb. 28, 2022), the Magistrate Judge issued a Report and Recommendation finding substantial evidence for the ALJ's denial of benefits. There, the plaintiff argued that the ALJ's decision should be remanded because he failed to include RFC limitations that addressed her non-severe mild mental impairments. *Id.* at *3. The Magistrate Judge rejected this argument because "[i]t was clear that the ALJ considered evidence of Charlier's impairment of depression at step four" and found that it did not warrant a work-related restriction. *Id.* at *4. Moreover, the Magistrate Judge noted that there is not a categorical rule in the Third Circuit stating that mild limitations in the "Paragraph B" criteria must translate to language in the RFC if the limitation does not affect a claimant's ability to work. *Id.* The Magistrate Judge noted that "it is possible that an ALJ's failure to consider a claimant's non-severe mental impairment at step four may constitute reversible error where the ALJ completely fails to consider limitations stemming from that non-severe impairment[,]" which was not at issue before the court. *Id.*

In adopting the Magistrate Judge's Report and Recommendation, the District Judge agreed that, although the plaintiff's mild mental health limitations were omitted from the RFC, the ALJ had provided a "valid explanation" for their omission in the step four analysis in accordance with *Hess v. Commissioner of Social Security*, 931 F.3d 198 (3d Cir. 2019). 2022 WL 1770336, at ¶ 11 (D. Del. June 1, 2022). The court reiterated that the ALJ was required to consider the plaintiff's mild mental health limitations in crafting the RFC. *Id.* at ¶¶ 10–11.

14

Furthermore, the court agreed that no Third Circuit authority mandated the inclusion of language in the RFC addressing non-severe mild mental health limitations if they do not affect a claimant's ability to work. *Id.* at ¶ 13. In overruling the plaintiff's Objections to the Magistrate Judge's Report and Recommendation, the District Judge ruled that the Magistrate Judge correctly determined that the ALJ "'addressed'" the mild limitations that arose from the plaintiff's non-severe depression, even though the ALJ did not include them in the RFC. *Id.* (quoting *Moore v. Colvin*, 239 F. Supp. 3d 845, 860 (D. Del. 2017)).

Here, unlike *Charlier*, the court recommends that this case be remanded because the ALJ did not explain how, or if, she included Plaintiff's credibly established non-severe mild mental health limitations in her RFC. (*See* D.I. 8 at 32–36) The ALJ asserts that her RFC assessment at step four "reflects the degree of limitation the undersigned has found in the 'Paragraph B' mental function analysis[,]" (*id.* at 31), but there are no discernable mental health limitations in the RFC, and the ALJ does not mention Plaintiff's mental health limitations in her step four analysis whatsoever. (*See id.* at 32–36) Moreover, the Commissioner erroneously represents in his answering brief that the ALJ assessed "no mental limitations[,]" despite the ALJ finding mild limitations in all four of the "Paragraph B" criteria. (D.I. 16 at 9; *see also id.* at 29–31)

The ALJ's failure to explain how Plaintiff's medically determinable mental health impairments were incorporated into the RFC constitutes error. Consequently, the court recommends that this case be remanded for further administrative proceedings to address the effect of Plaintiff's non-severe mental health limitations on her RFC. Namely, the ALJ must explain on remand whether Plaintiff's non-severe mild mental impairments limit her ability to work as a data analyst or secretary, which are skilled positions. (*See* D.I. 8 at 36 (citing DOT § 033.167-010, 1991 WL 646559; DOT § 201.362-030, 1991 WL 671672))

### 3. The Timeframe Under Consideration by the ALJ is Unclear

Lastly, Plaintiff argues that remand is necessary because the time period under consideration in the ALJ's decision is inconsistent. (D.I. 13 at 17–18) It is undisputed that Plaintiff amended the AOD from January 1, 2018, to September 1, 2022, during the telephonic hearing with the ALJ, (D.I. 8 at 56–57), but the ALJ's decision twice states that the AOD is January 1, 2018. The ALJ does so first in summarizing the issues and her conclusion at the beginning of the decision before reciting the applicable law, (*id.* at 26), and, importantly, in her ultimate conclusion of law. (*See id.* at 36) The references are inconsistent and create confusion. Moreover, nearly all of the medical evidence discussed in the ALJ's decision predates September 1, 2022. (*See id.* at 25–36) Plaintiff argues that the inconsistent references to the AOD might technically preclude her from seeking disability benefits for the closed period from January 1, 2018, through September 1, 2022. (*See* D.I. 13 at 17–18) Therefore, the court recommends that the case be remanded for further administrative proceedings requiring the ALJ to explain and clarify the correct AOD applicable to her decision and the disability period under consideration.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion for summary judgment (D.I. 12) be **GRANTED-IN-PART** and the Commissioner's (D.I. 15) be **DENIED-IN-PART**. The court recommends **GRANTING** the Commissioner's motion regarding the ALJ's finding of non-severe mental impairments at step two and **DENYING** the motion in all other respects. The court recommends **GRANTING** Plaintiff's motion regarding the ALJ's failure to consider Plaintiff's non-severe mild mental health limitations in her RFC formulation and regarding the inconsistency of the disability period under consideration and **DENYING** it in all other respects. The court further recommends that the ALJ's decision be remanded with the

following instructions:

> (1) The ALJ shall address the omission of Plaintiff's non-severe mental impairments in the RFC, namely, whether Plaintiff's non-severe mild mental impairments limit her ability to work as a data analyst or secretary, which are skilled positions; and

> (2) Explain and clarify the correct AOD applicable to Plaintiff's decision and the disability period under consideration.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 30, 2024

Sherry R. Fallon
United States Magistrate Judge